All right, our next case is number 22-12798, United States v. Andrew Butler, III, and it's Andrew Butler, III. Mr. Ackbar. Good morning. May it please the Court. Before you begin, I know that you're court-appointed, and I want to thank you on behalf of the Court and on behalf of Mr. Butler as well for your service and for taking the case. We really appreciate it. Thank you, Your Honor. I appreciate that. And for doing such a good job at the trial. You got a not guilty on one count. Yes, sir. Yes, ma'am. Thank you, Your Honor. You really did a marvelous job. Thank you. I appreciate it. I know we have some tough issues here, but I think that should be said, too. You stepped in a really tough situation. Thank you, Your Honor. Even Judge Henkel praised you. Yes. Oh, what a good job you did in trying that case and getting that not guilty. Thank you, Your Honor. And at this stage, Your Honor, we'll continue to fight for Mr. Butler, and even in, you know, with his position that he's been taking. But I think what's important in this case is what we're focusing on is the pro se issue. And what's inherent in the Sixth Amendment is that even though it's not explicit in the Sixth Amendment, but what's inherent in the Sixth Amendment is the defendant's right to represent himself in any kind of case. You agree that the right to self-representation is not absolute? I agree, Your Honor. And what the cases state is that there has to be obstructionist behavior by the defendant in order for that to be taken away from that defendant. And even though this circuit has not, there are no opinions on point in this circuit, there have been a number of opinions from the Third Circuit, Eighth Circuit, Ninth Circuit that deals with this issue, and even the Seventh Circuit. And there's a range of behaviors that we've seen that the circuit courts have addressed in dealing with behavior that's inappropriate or inappropriate enough in order to remove that pro se. So I guess my question is, what exactly do you believe would constitute serious and obstructionist behavior? Because your client obviously did a lot of different things that were fairly disruptive to the court proceedings. Yes, Your Honor. And we look at guidance from, and in several different cases, one of which is United States v. Noble, that's 42 Federal 4346, that's out of the Third Circuit. And in that case, the defendant in that case, he accused the district judge of criminal conduct. He alleged that the circuit was controlled by the Illuminati. He demanded a change of venue. He refused to speak to the judge, refused to answer a series of questions, and just refused to participate. The same in United States v. Brock, that's out of the Seventh Circuit. The defendant in that case stormed out of the courtroom. He was held in contempt several different times. And also in United States v. Brown, that's 791 Federal 2nd 577. In that case, the defendant refused to participate in the trial by sitting in the gallery. There were behaviors by Mr. Butler, such as hanging up the phone during the telephonic hearing and refusing to come to court. The refusing to come to court portion was not when he was pro se. That's when he was represented by counsel at that time. When he hung up the phone, that was during an exchange between Mr. Butler and the court. And in that particular incident, the exchange was regarding what Mr. Butler's focus was. He was focusing on the warrant. He was focusing on whether the indictment was appropriate. And Judge Hinkle in that case, in that phone call, was engaging him on what was appropriate to argue. There were several cases, I believe. Also, is the hang up the same thing as walking out of the hearing? Or that was a different incident? Yes, ma'am. I believe that. And I would concede that it would be similar. But that was a separate offense? Or that was a separate conduct by Mr. Butler, walking out of the hearing? Well, that was the same one that I was referring to when he hung up the phone or he walked out. And the jail staff told him about six minutes later. And I would concede that that was one incident. And if you compare it to everything that had been going on, and one thing that I think the judge was doing, he was saying that behavior was predictive of how Mr. Butler would behave at trial. I also believe that Mr. Butler's behavior at the trial would also be predictive of how he would behave at trial. And in the motion to suppress, it's clear in the record that there were no outbursts by Mr. Butler, that he complied with the court's rules, that he questioned witnesses, that he went through with the motion to suppress as an attorney would have as far as his questioning and responding to the court. And if we're going to look at predictive behavior prior to, I think we also should look at the predictive behavior at the motion to suppress and how Mr. Butler would perform during the trial and that he would be professional during the trial in that case. There are other cases that I think we can compare as well, such as United States v. Engle, 968 Federal Third 1046, that's out of the Ninth Circuit. In that court, I mean, in that case, Engle's based off of him asking what the court felt was an inappropriate question to a witness at the time that they believe that could have obstructed the trial moving forward if he continued to behave such a way. And the Ninth Circuit in that case found that it was inappropriate to remove the pro se status at that point. Judge Hinkle did a 16-page order with detailed statement of reasons for revoking self-representation and he goes through many of the factual scenarios in history. And I didn't see anywhere where you challenged Judge Hinkle's. I'm not saying you should have. I just want to make sure I understand. There's not a challenge to the facts of what Judge Hinkle recites in his 16-page statement of reasons, is that correct? That's correct, Your Honor. Yeah, I don't think you could have, but I just think for the record, he did do a comprehensive order of the timeline and what he experienced. Yes, Your Honor. The reason why I ask that is a lot of these interactions, there's no transcript filed on appeal. So, there's like a transcript on three or four of them, but there's like 10 of them, we don't have the transcript because they were Zoom calls or whatever. The court reporter was there. But also, as Judge Hinkle articulated or explained in his order, a court reporter cannot transcribe when someone is talking over another person. So, Judge Hinkle's order obviously addresses the fact that Mr. Butler repeatedly talked over Judge Hinkle and that was not transcribed because the court reporter was trying to transcribe what the judge was saying. Yes, Your Honor. And it's our position that even with that interaction, it still was not obstructive to moving the case forward. We understand your position, but because we don't have transcripts, the court reporter could have just said, can't record what defendant's saying. She did take down what Judge Hinkle said. That's what Judge Hinkle says, but she couldn't get everything he said. But I don't think it matters as long as we don't have any challenge to Judge Hinkle's factual recitations in his statement of reasons dated July 15, 2022. I think we can take that as the record. Yes, Your Honor. We can take that as the record as far as how those communications went. And because this is a constitutional right that Mr. Butler has, it's an important right that he represented in pro se. I'm not saying that ends the matter. I'm just saying, I got to have a factual basis for whatever the ruling is. And we found most of this, it was taken down with the court reporter, but it's not actually filed as a record as to the, you know, an actual official transcript. Yes, Your Honor. What do you believe that Judge Hinkle should, what should Judge Hinkle have done before he revoked Mr. Butler's ability to represent himself? Prior to revoking his ability to represent himself, could have given standby counsel, which would have been me at the time, the opportunity to kind of explain the situation to Mr. Butler. Did Judge Hinkle explain to him that if he repeatedly continued to interrupt the proceedings that he would be revoking his right to represent himself? He did, Your Honor. And I think one of the things, and again, with all due respect to Judge Hinkle, a lot of it was engaging Mr. Butler because of what Mr. Butler was focusing on. Because Mr. Butler was focusing on the warrant, he was focusing on the indictment and not the actual facts of the trial. Judge Hinkle constantly engaged that interaction, which I think was inappropriate. And the case law says that if a defendant wants to focus on something that would be detrimental to his trial, that's up to the defendant. Do you . . . I believe that there were several times when Mr. Butler was supposed to appear in front of the court and he refused to leave his cell. Yes. Correct. How many of those times should Judge Hinkle have allowed before he needed to do something like a cell extraction, which is a very messy proceeding? And I see my time is running. If I could be allowed to answer that question. Of course. And what I wanted to focus on again is that when he refused to leave the cell, from my memory of the record, that was prior to him being pro se. So it was after that behavior that the court actually allowed him to go pro se at that time. But although I think I agree with you that you sort of need to look at the post-Ferretta-Grant behavior, doesn't the pre-Ferretta-Grant behavior also provide important context as to, in Judge Hinkle's view, thinking that Mr. Butler was not going to change his ways, that this was a pattern of behavior that began when he had counsel, continued when he no longer had counsel, and was going to go forward and just not stop? Yes, Your Honor. And that's why I referred to the record in the transcript in regards to the motion to suppress. That was post-Ferretta. That was while he was pro se. And it was clear from that hearing, which would probably be most similar to a trial where Mr. Butler performed, he was professional, he asked questions, he got through the hearing and there was no issues. My problem is that once that went against him, everything started to go south because he started questioning Judge Hinkle's fairness and the fact that he was accepting people who were lying to him and all of that. So I take your point. I take your point. He did not cause any issues at the suppression hearing. Yes, Your Honor. Okay, Mr. Ackbar, thank you very much. You've saved your time for rebuttal. Mr. Naramore. May it please the Court, Walter Dammel for the United States. The District Court properly revokes Mr. Butler's right to self-representation because the right articulated in Ferretta is not absolute and Mr. Butler's obstructionist behavior disrupted and delayed the proceedings in a life that would have continued. I think both sides agree that the right is not absolute and the Court has already discussed that with Mr. Ackbar. Also, I think it's very relevant to the fact that this is a factual determination made by Judge Hinkle. As the Court has acknowledged, it's very difficult for the appellate court to really comprehend the obstructionist behavior and Mr. Butler's attitude toward the Court throughout those several hearings. As a result, the government believes that the clear error standard is appropriate in this situation. The Court has already talked about the timeline and his obstructionist behavior. Mr. Butler was obstructionist throughout but it really did change after that motion to suppress hearing. He was fixated on that warrant and the idea that the warrant was somehow fraudulent because of some of the markings that were on the paper and then after Judge Hinkle ruled against him. Can we go back to that issue of the standard of review because when let's say the trial court denies a request for a defendant to represent himself, this Court will review that de novo. Why wouldn't we review this de novo? Because of the factual determination and the difficulty of this Court to be able to understand the obstructionist behavior through just the text in the record. In several cases, both Brock in the Eighth Circuit and Noble in the Third Circuit, they applied clear error standard to this specific decision and the government thinks that is also appropriate. Clear error to the ultimate decision to revoke or the underlying factual findings supporting that decision to revoke? Well, the underlying factors, Your Honor, but obviously they play a significant role in determining. If we all agree that the rat is not absolute and that his obstruction is to the extent that it delays the proceedings unnecessarily, then that is the primary underlying determination of the decision to revoke. But back to Judge Lagoa's point, you don't review the ultimate decision for clear error. For example, if the district court judge makes factual findings on 1, 2, and 3, facts 1, 2, and 3, and those facts don't add up to obstructionist or delaying behavior, our review of the ultimate decision is not clear error, right? It's de novo. You found these facts, we accept those but now we apply a mixed question of law review and determine whether on those facts, except it is correct, you should have revoked, right? I acknowledge that and the government's point was the deference that should be played or should be given to Judge Hinkle in that factual determination, which is such a critical part of this ultimate decision. Your Honor, as I was saying . . . How would you, Mr. Haramore, articulate the standard? It's one thing to say we should affirm but I think as both sides have acknowledged, we don't have any published cases on point with regards to revoking the right for this type of reported behavior. How would you articulate the standard that you think we should announce? Your Honor, I think that the court should look to the other circuits that have considered this issue, such as the ones cited by opposing counsel, particularly the ones for U.S. v. Brock and U.S. v. Noble. Again, they discussed the application of the clear error to a portion of that decision and how that ultimately plays into the final decision. Your Honor, in this case, as I was saying, Mr. Butler's behavior, it did become increasingly obstructionist after the motion to suppress hearing. It is accurate that he was able to represent himself appropriately in that hearing. He was obstructionist throughout and problematic throughout the entire course of this prosecution, but it became worse after Judge Hinkle ruled against him. He became convinced that Judge Hinkle was somehow biased against him and then each hearing he came into, he got into an argument with Judge Hinkle. Every time Judge Hinkle spoke, he would interrupt him and argue over him. This happened over several occasions. More importantly, in at least two of those hearings, he basically refused to appear at trial. He told Judge Hinkle that based on his dissatisfaction of what was occurring, that he would not show up at trial. He forced Judge Hinkle basically to either bring him in in shackles or to delay the trial. Judge Hinkle, in those instances, chose to delay the trial, and that would have continued. At the point where he did, in fact, revoke his self-representation, he was repeating that same pattern. We were in a hearing, he kept continually interrupting Judge Hinkle, he kept telling Judge Hinkle he wasn't ready for trial, and then he was at the point where he was saying he wasn't going to show up. The judge was at the point where he could continue this pattern that didn't show any indication that it would change, or he could revoke his right of self-representation after warning him that he was going to do so, and that is ultimately what he did. I think that the case law, if you look at the other circuits that have considered this, are particularly relevant in comparing the behavior that is necessary to revoke the right versus those that are not. I thought there was a split on the circuit on the standard of review. I don't know that there was a split, Your Honor. In some of the other cases, it's not clearly addressed. And so, as I was commenting— They look like they're de novo, right? Some of them look like they were de novo. Yes, Your Honor. Some look like they are de novo. I mean, they just kind of review it de novo. I mean, I know they don't say that. But in Brock, it's abuse of discretion, which— And some say abuse of discretion. Yes, Your Honor. And that's what I was pointing—Brock and Noble talk about—Nick Noble talks about clear error, and Brock talks about abuse of discretion, and then some of the others, like Mosley and Engle, they don't specifically state the standard they're applying. But it looks like, when you read the cases, that it's de novo. Yes, it does, Your Honor. Okay. I appreciate your concession. I mean, I just think it's important to say we kind of have a division out there. It looks like it. Yes, Your Honor. And again, the government's primary point here is just the difficulty of the factual determination in this case, because as you were mentioning, it's just so hard for the record to record the behavior of the defendant in the hearings. I don't know how difficult it is here, because you got a lot of hearings. You got 14 hearings. You got a lot of conduct. I mean, it might in some cases, but I don't know how difficult to determine what's going on here. And Judge Hinkle, obviously, he went to great lengths to write the order. I mean, he recognized this would be an issue, the fact he was revoking his right to self-representation. Yeah, he took it very seriously. Yes, he wrote a very detailed order trying to articulate the issues that he was having continually with Mr. Butler that made the revocation of the right necessary. If he'd been convicted on this gun charge with these drugs, it would have had a double the sentence probably, right? I don't know it would have doubled it, Your Honor. But it would have been a lot greater sentence if he'd been convicted on the gun charge in the motel room with the drugs, right? Certainly, it would have increased. I mean, it was a factor on sentencing that he got the two-level increase, I believe, for the presence of the gun. Because he had the acquittal on the gun charge. Yes, he had acquittal on the gun charge, but it was still considered in his sentencing. So, he got the enhancement, the two-level enhancement for the presence of the gun. It was still considered, but I certainly agree that Judge Hinkle probably would have sentenced him to a greater sentence had he been convicted. What is the sentence here within the advisory guidelines? I know he didn't challenge the sentence. I'm just curious. It was like 80 months or something. He received an 84-month sentence. And where was that on the guideline range? Or do you know? It was on the lower end of the guideline range. Okay. The last point I wanted to make was just, I think if you look at Engle and Smith, the cases where the circuit courts reversed the decision of the lower court, I think they provide important contrast to the behavior that is necessary to revoke someone's right to self-representation. So, in Engle, the defendant asked one inappropriate question during a long, extended trial, and the judge addressed that, but then revoked his right, right? And so, the idea there was that court could have addressed the issue he caused without revoking his right to self-representation because it wasn't a repeated behavior. And then in Smith, the individual, he was a sovereign citizen, so he wanted to present sovereign citizen-type legal arguments, but he was completely respectful to the court, and he said he was ready to proceed to trial on the date that the trial was. Obviously, under, if a defendant who chooses to self-represent themselves, obviously can make any argument as long as it's not disruptive or contumacious or in any way, shape, or form disruptive of the court proceeding. And here, when you read the record, and you can correct me if I'm wrong, but after the suppression hearing, Mr. Butler was disruptive during each and every single instance that he interacted with the district court judge. Yes, Your Honor, and you're right. Certainly, the defendant can present even legal arguments that are not successful. The problem here is he wanted to present an argument the judge had already ruled on. And so, the case law does say that the parties have to accept, they have the right to appeal, but in the moment, they have to accept the ruling of the judge, and he refused to do that. So, it's not just that he wanted to present a novel legal argument, he wanted to present a legal issue to the jury that the judge had already ruled on, and he would not come off of it. And so, and then, on top of the inappropriate legal argument, he continually interrupted the judge. He wouldn't let the judge conduct the hearings that he repeatedly, not just walked out, but he repeatedly said, I'm not going to show up when he didn't get his way. And that's what he was doing in this case. He had done that at least two other times, causing two delays after his denial of the motion to suppress, and he was getting ready to do it again. And there was no indication that behavior would have stopped at any point. Your Honor, with that, I rest on the brief. Thank you. All right, thank you very much. May it please the Court, I just wanted to follow up on just a couple issues, and I agree that the standard should be de novo as far as the facts. And I believe the cases, even if they weren't clear in saying that, that it's clear that that has been a review as far as de novo. And I do want to go back to the fact that Mr. Butler's, and we are conceded, as I did in my brief, that his behavior was not appropriate at all times. But I believe that the standard that the Court has to look at is, was it obstructive, and did it delay the trial in a significant manner? When you look at towards the later end, after the, I believe December was when the motion to suppress took place, sometime in February, the Court did a status hearing with the trial being set to start in March. And at that time, that's when the telephonic hearing took place, and Mr. Butler was saying that he did, he was saying that things were being unfair at that point. And again, the Court kind of engaged him on, well, you can't argue about the warrant, you can't argue about the indictment, you can't argue about the motion to suppress, where I believe that he could have, you know, even if it was to his detriment as the case is safe, and as long as it wasn't inappropriate as far as evidentiary, that that was to, if it was to his detriment, and he didn't want to argue the specific facts to the case, he didn't have to be engaged by the Court. So it caused it to be, the behavior to be obstructivist at that point. And then again, if we, once he came to court, I believe prior to the trial to status in April, I believe, at that point, there was engagement based off of what Mr. Butler thought was unfair. But at that point, the Court could have said, we're picking the jury that Monday and move forward with the trial, and there was no indication that he wasn't going to show up or would have had to been brought in and shackled. So although his behavior was inappropriate, we don't believe it rose to the level as it did in other cases throughout the other circuits where he would have refused to participate in the trial. Okay. All right. Thank you. Thank you very much, Mr. Rackford. Thank you very much, Mr. Naramore.